**CITY OF MADISON, MISSISSIPPI,**
Plaintiff-Appellant,

v.

**BEAR CREEK WATER ASSOCIATION,**
**INC., Defendant-Appellees,**

United States of America, through its
agency, Farmers Home
Administration, Intervenor-Appellee.

No. 86–4552.

United States Court of Appeals,
Fifth Circuit.

May 15, 1987.

E. Stephen Williams, Stephen W. Rimmer, Michael T. Parker, Jackson, Miss., for plaintiff-appellant.

Leslie J. England, Rapid City, S.D., for amicus Rapid City.

James H. Herring, Canton, Miss., Michael T. Parker, Jackson, Miss., for amicus Miss. Mun. Assoc.

Laura E. Frossard, Dept. of Justice, Appellate Section, Land & Natural Resources, Washington, D.C., L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., Martin W. Matzen, Atty., Dept. of Justice, Appellate Section, Land & Natural Resources, Washington, D.C., for U.S.

James P. Coleman, Ackerman, Miss., for amicus curiae Miss. Rural Water Assoc.

Louis T. Rosenberg, San Antonio, Tex., for amicus curiae Green Valley Water Supply Corp. and Texas Rural Water Supply Assoc.

Before THORNBERRY, GEE, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The City of Madison, Mississippi ("Madison"), appeals from the district court's grant of summary judgment in favor of Bear Creek Water Association, Inc. ("Bear Creek"), and the Farmers Home Administration ("FmHA"). Because we agree with the district court that 7 U.S.C. § 1926(b) precludes municipal condemnation of a water association's facilities during the term of its indebtedness to the FmHA, we affirm.

## I. BACKGROUND

In the early 1970's, Bear Creek, a non-profit corporation, was organized to seek a certificate of public convenience and necessity from the Mississippi Public Utility Commission to operate a rural water utility. As the proposed certificated area was within one mile of the city limits of Madison, the city's acquiescence was necessary before the certificate could be issued. In 1971, the city agreed to relinquish its rights in the area, and Bear Creek received the certificate of public convenience. Since this time, Bear Creek has installed and operated the water system in the certificated area, financed by five loans from FmHA.[1]

However, during this time the City of Madison has grown substantially, and its boundaries now include a part of the area served by Bear Creek. In 1985, the city instituted eminent domain proceedings to condemn Bear Creek's facilities located within city limits as well as Bear Creek's certificate to operate in that area. This area includes approximately 40% of Bear Creek's customers, and 60% of Bear Creek's water supply facilities, including its water plant, wells, and feeder mains. FmHA subsequently intervened and the case was removed to federal court pursuant to 28 U.S.C. §§ 1444 and 2410.

In July 1986, the district court granted Bear Creek's motion for summary judgment on the ground that because Bear Creek was indebted to FmHA, 7 U.S.C. § 1926(b) applied and precluded the city's condemnation action. The city now appeals.

---

1. Bear Creek's current indebtedness to FmHA is approximately $1.4 million, and Bear Creek has recently qualified for an additional $1 million in FmHA loans for system expansion and improvements.

## II. DISCUSSION

■ We review summary judgments in the same manner as the district court, in terms of whether there is any genuine issue of material fact and whether appellee was entitled to judgment as a matter of law. *McCrea v. Hankins*, 720 F.2d 863 (5th Cir.1983).

### A. 7 U.S.C. § 1926(b)

Regarding water associations indebted to FmHA, 7 U.S.C. § 1926(b) provides:

> The service provided or made available through any such association shall not be curtailed or limited by the inclusion of the area within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of said loan; nor shall the happening of such event be the basis of requiring such association to secure any franchise, license or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

The district court held that this provision prohibits cities such as Madison from curtailing the services of funded water associations, be it through annexation, franchise, or condemnation. Madison argues that because the statute does not expressly prohibit condemnation, § 1926(b) only protects such associations from competition from municipalities, and thus does not preclude such entities from exercising their right of eminent domain.

■ We disagree. The statute unambiguously prohibits any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion. This language indicates a congressional mandate that local governments not encroach upon the services provided by such associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means. To read a loophole into this absolute prohibition, as Madison would have us do, and allow a city to do via condemnation what it is forbidden by other means, would render nugatory the clear purpose of § 1926(b). See *Moore Bayou Water Association, Inc. v. Town of Jonestown*, 628 F.Supp. 1367 (N.D.Miss. 1986) (holding municipal condemnation of water association's facilities and certificate violative of § 1926(b)).

Madison contends that this construction of the statute is untenable because it leads to the "plainly absurd" result that FmHA-financed water authority could avoid condemnation even if it owed only $1.00 on its government loan. However, it was Congress, and not this Court, that literally proscribed interference by competing facilities with the rural water authority "during the term of said loan." The city's logic also assumes § 1926(b) must somehow be construed to effectuate the local condemnation power. Pursuing such logic, we might decide that so long as the condemnation does not "unduly interfere" with the water authority's payment obligations to FmHA, or with its ability to service rural water users, the condemnation may proceed. Such a result, however, would have a perverse impact upon both the rural water authority and the would-be condemnor. In each case, the contending parties could raise and seek adjudication of the fact issue concerning the extent of interference that would result from condemnation. A condemnation case impinging on a rural water authority could easily involve both state and federal court litigation, high legal fees and considerable delay, to the ultimate detriment of the municipality, the rural water authority, and the consumers of water service. A bright-line rule which prohibits condemnation throughout the FmHA loan term at least creates certainty for the municipal planner and the rural water authority, even if it limits the municipality's options.

■ Madison, however, argues that our interpretation of § 1926(b) is contrary to the legislative history of that provision. While we need not resort to legislative history where, as here, the statutory language is unambiguous and yields no absurd results, see *Steere Tank Lines, Inc. v. I.C.C.*, 724 F.2d 472, 477 (5th Cir.1984), we note that our interpretation of § 1926(b)

comports with the purposes found in its legislative history:

> By interpretation, loans cannot now be made unless a major part of the use of the facility is to be by farmers. This section would broaden the utility of this authority somewhat by authorizing loans to associations serving farmers, ranchers, farm tenants, and other rural residents. This provision authorizes the very effective program of financing the installation and development of domestic water supplies and pipelines serving farmers and others in rural communities. By including service to other rural residents, the cost per user is decreased and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water. A new provision has been added to assist in protecting the territory served by such an association against competitive facilities, which might otherwise be developed with the expansion of municipal and other public bodies into an area served by the rural system.

S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2243, 2309. This history indicates two congressional purposes behind § 1926: 1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and 2) to safeguard the viability and financial security of such associations (and FmHA's loans) by protecting them from the expansion of nearby cities and towns.

The case at bar exemplifies the evil Congress wished to avoid. Bear Creek's affidavits showed that Madison desires to condemn 60% of its facilities and 40% of its customers, including the most densely populated (and thus most profitable) territory now served by Bear Creek. Even if fair value is paid for the lost facilities, such an action would inevitably have an adverse effect on the remaining customers of Bear Creek, in the form of lost economies of scale and resulting higher per-user costs. To allow expanding municipalities to "skim the cream" by annexing and condemning those parts of a water association with the highest population density (and thus the lowest per-user cost) would undermine Congress's purpose of facilitating inexpensive water supplies for farmers and other rural residents and protecting those associations' ability to repay their FmHA debts. See *Public Utility District No. 1 of Franklin County v. Big Bend Electrical Cooperative, Inc.*, 618 F.2d 601 (9th Cir.1980) (similarly rejecting utility's attempt to condemn property owned by cooperative financed by the Rural Electrical Administration).

Our interpretation of § 1926(b) is also inferentially supported by FmHA regulations regarding the transfer of water facilities subject to FmHA liens. These regulations require that any transfer must be approved by FmHA to insure that services will not be curtailed and that repayment of the FmHA loans is not jeopardized. 7 C.F.R. 1951.209, 1951.214 (1986).[2] The regulations also suggest an alternate means by which the city might acquire the facilities it desires, in the context of a consensual sale.

**B. Tenth Amendment**

■ The city urges that if § 1926(b) limits the city's sovereign condemnation power, it violates the Tenth Amendment to the Constitution. We are not unsympathetic to enforcing the legitimate Tenth Amendment-based claims of state authorities against federal government infringement. Our natural ardor to preserve that critical division of power between the federal and state governments, a bulwark of protecting our individual liberties, is necessarily dampened, however, by the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Inas-

---

**2.** Appellants' reliance on the unreported case of *View-Caps Water Supply Corp. v. City of Abilene*, No. CA–1–83–119–W (N.D.Tex.1985) is misplaced. In that case, where the district court allowed the City of Abilene to serve customers in an area originally certified to the water association, FmHA had apparently approved a contract between the parties which provided for the city's acquisition of the water facilities in the event of annexation. In the case at bar, there is no such contract and there has been no FmHA approval.

much as *Garcia* upheld the application of the Fair Labor Standards Act against a city entity as a valid execution of congressional power under the commerce clause, it may or may not be directly controlling in this case. The City of Madison would not prevail even under a broader vision of the Tenth Amendment than the Court propounded in *Garcia,* however, for we perceive no significant limitation on the city's powers by virtue of a statute enacted to protect FmHA's subsidy of rural water authorities. FmHA's characterization of § 1926(b) as resting on Congress's undoubtedly broad powers under the spending clause seems more appropriate to this case than any commerce clause-based argument. Constitution Art. I, Section 8, clause 1. See *Helvering v. Davis,* 301 U.S. 619, 645, 57 S.Ct. 904, 910, 81 L.Ed. 1307 (1936) ("When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states. So the concept be not arbitrary, the locality must yield.")

The issue is not, as the city would have it, whether under the Tenth Amendment its condemnation power is integral to its sovereignty, but rather whether the provision of water service is essential to its sovereignty. Let us assume that it is. *See Brush v. Commissioner,* 300 U.S. 352, 370–73, 57 S.Ct. 495, 500–02, 81 L.Ed. 691 (1937). Section 1926(b) limits the city's provision of such service not only by condemnation but also by preventing the city from granting a competing franchise, building its own competitive facility or otherwise curtailing the service of the federally funded rural water authority. Section 1926(b) does not, however, permanently curtail the city's authority, because it applies only while the federal debt is outstanding. Additionally, the city may and does regulate growth within that part of Madison served by Bear Creek so as to assure minimum standards of water service such as adequate fire hydrants. The city can and has in the past collaborated with Bear Creek to collect municipal bills for sewer service. It may also, pursuant to FmHA regulations, agree to purchase facilities from Bear Creek. The limits on the provision of water service are thus restricted in time and in scope so as not to disable the city severely from performing its governmental function. At most, Section 1926(b) ordains a dual water authority function within a municipal area for a period of time.

Equally important, it is likely that FmHA's subsidy to the rural water authority enhanced real estate values and farm prosperity in and around the city and has provided an indirect benefit to the city's overall economic conditions in exchange for the limits on its water service authority. The overall effect of this statute is therefore not so much to infringe the city's sovereign power as to foster a cooperative effort between local and federal authorities. The Tenth Amendment is surely not offended by a limited restriction imposed by the federal government to protect its subsidized loans, particularly when the benefits of those loans accrue to the municipality.

### III. CONCLUSION

Because § 1926(b) forbids, as a matter of law, municipal condemnation of an FmHA-indebted water association's assets, there was no genuine issue of material fact before the district court. Summary judgment was therefore correctly granted.

AFFIRMED.