**PINEHURST ENTERPRISES, INC.,** Pinehurst Water Company, and Pinehurst Sanitary Company, North Carolina Corporations, Plaintiffs,

v.

The **TOWN OF SOUTHERN PINES,** a North Carolina Municipal Corporation, the Council of the Town of Southern Pines, North Carolina, the governing body of the Town of Southern Pines, including all members of the Council for the Town of Southern Pines in their official capacities, William Coleman, in his capacity as Town Manager of the Town of Southern Pines, and Jane Clark, in her capacity as Mayor of the Town of Southern Pines, Defendants.

No. C–87–774–R.

United States District Court, M.D. North Carolina, Rockingham Division.

June 24, 1988.

Frank A. Schiller and Edward S. Finley of the firm of Hunton & Williams, Raleigh, N.C., David F. Peters and Sondra Tomlinson of the firm of Hunton & Williams, Richmond, Va., for plaintiffs.

W. Lamont Brown of the firm of Brown, Robbins, May, Pate, Rich, Scarborough & Burke, Pinehurst, N.C., Roddey M. Ligon, Jr. and Gusti W. Frankel of the firm of Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., and James D. Monteith of the firm of Waggoner, Hamrick, Hasty, Monteith, Kratt, Cobb & McDonnell, Charlotte, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment on Plaintiffs' Federal Claims and on Plaintiffs' State Law Claims Due to a Lack of Pendent Jurisdiction (December 21, 1987). In the underlying action, the parties dispute, *inter alia*, who has the right to provide sewage service to a development in southern Moore County, North Carolina. For the reasons stated below, the Court will grant defendants' motion for summary judgment with respect to Claims I, II and X–A. Further, the Court will dismiss Claim III for failure to state a claim under 42 U.S.C. § 1983. Finally, the Court will not exercise pendent jurisdiction over the state law claims and will dismiss them.

## I. FACTS

For the most part, the parties agree on the underlying facts giving rise to this dispute. Accordingly, the verified complaint and defendants' admissions in their answer establish the following facts. Plaintiffs, Pinehurst Enterprises, Inc., Pinehurst Water Co., and Pinehurst Sanitary Co., are each corporations incorporated under the laws of North Carolina and headquartered in the Village of Pinehurst, North Carolina. Pinehurst Sanitary Co. and Pinehurst Water Co. are wholly owned subsidiaries of Pinehurst Enterprises, Inc., and both are public utilities authorized by certificates of public convenience and necessity to provide public utilities service in and around the Village of Pinehurst. Pinehurst, Inc. was the predecessor corporation of Pinehurst Enterprises, Inc.

Defendant Town of Southern Pines [Southern Pines] is a municipal corporation organized and existing under the laws of the State of North Carolina. Defendant Town Council of the Town of Southern Pines is the governing body of that town. Defendants Jane Clark and William Coleman are, respectively, the mayor (previously mayor *pro tem*) and town manager of Southern Pines. Pinehurst National Corp. [Pinehurst National] is a North Carolina Corporation that is developing a tract of land in southern Moore County, North Carolina. Plaintiffs and defendants both desire to provide Pinehurst National with water and sewer utility service. The Court allowed Pinehurst National to intervene for the limited purpose of entering into a consent order that allows plaintiffs to furnish sewer service to Pinehurst National during the pendency of this litigation.

Pursuant to 33 U.S.C. §§ 1281–89, Moore County applied for a federal grant to aid in the construction of a wastewater treatment facility in southern Moore County. In connection with the application, Moore County, as the lead agency, prepared a "201 Plan" for sewer service to the Southern Moore County region. Plaintiffs and defendants both supplied information, comments, and funds during the preparation of the 201 Plan.

In December 1973 the Town of Southern Pines adopted a resolution providing in pertinent part:

NOW THEREFORE be it ordained, that the County of Moore and each of the communities of Pinehurst, Southern Pines, Aberdeen, and Pinebluff do in the interest of health, safety, and public welfare of the citizens of Moore County, declare and establish a 201 Planning area to be the Aberdeen Creek watershed.

AND do hereby commit themselves collectively to the proposition of treating all wastewater in this planning area jointly;

AND further commit themselves not to fragment the intended and proposed wastewater treatment planning area by individual efforts inconsistent with the Master Plan for the area;

AND do hereby further commit themselves as individual communities in the Planning Area to take part in the program and share their proportionate cost of wastewater treatment as necessary under the program, and recognize Moore County as the lead agency for providing wastewater facilities in Moore County. Similar resolutions were adopted by other municipalities in southern Moore County, as well as by Pinehurst, Inc. between December 1973 and February 1974. As stated before, Pinehurst, Inc. was the predecessor corporation of plaintiff, Pinehurst Enterprises, Inc.

Moore County adopted the 201 Plan in 1974. In furtherance of the 201 Plan, Moore County and Pinehurst, Inc. entered into a "Sewage Treatment and Disposal Service Contract" dated August 20, 1975. Therein, Moore County agreed to provide wastewater treatment services to Pinehurst, Inc., who in turn agreed to receive such services. Additionally, Moore County entered into a similar contract with Southern Pines in furtherance of the 201 Plan.

On or about October 27, 1977, the Moore County Board of Commissioners adopted the Moore County Sewer Use Ordinance to govern operations at the County's new wastewater treatment facility, into which all wastewater from the Southern Moore County Wastewater System District would be pumped for treatment. Adoption of the Sewer Use Ordinance was a requirement for the federal financing.

Moore County was successful in securing an Environmental Protection Agency grant to aid in construction of the facility. Part of the remaining financing was secured through a loan made and insured by the federal government acting through the Farmers Home Administration [FmHA].

On or about November 27, 1977, the Moore County Board of Commissioners passed "Addendum II" to the Moore County Sewer Use Ordinance. Addendum II states that the Moore County Waste Water System District is "divided into the following four service areas: 1. Aberdeen Service Area 2. Pinehurst Service Area, 3. Southern Pines Service Area 4. Aberdeen South Service Area." *See* (Complaint Exhibit C at Addendum II). Addendum II also states that the first three service areas listed above are assigned respectively to the Town of Aberdeen, Pinehurst, Inc., and the Town of Southern Pines. The Aberdeen South Service Area was unassigned.

The share of the debt service on the FmHA loan borne by each Service Agency is based upon the percentage of the treatment facility capacity reserved to serve each Service Area. The percentage of the capacity reserved to serve each Service Area was determined by the projected population within the Service Area to be served at full utilization anticipated to occur in year 2010. Plaintiffs have paid their share of the annual debt service—$143,328 per year—for approximately the past ten years.

Pinehurst National is developing the Pinehurst National Golf Club [the development]. The development lies within the "Pinehurst Service Area" referred to in Addendum II. Subsequent to the execution of the Sewage Treatment and Disposal Service Contracts and passage of the Moore County Sewer Use Ordinance, Southern Pines annexed the area that Pinehurst National is developing. Thereafter, plaintiffs and defendants both desired to provide service to Pinehurst National.

In June of 1987, Pinehurst National filed a request with the Town of Southern Pines to rezone the 512.79 acres that are to be developed. The Town Council approved the zoning request on the express condition that Pinehurst National use Southern Pines water and sewer. Not surprisingly, the parties disagreed as to who has the right to service Pinehurst National. Thus, the dispute generated this lawsuit with the complaint being filed on November 4, 1987. The parties and Pinehurst National entered into a consent order allowing plaintiff to provide service to Pinehurst National during the pendency of this action.

## II. DISCUSSION

Defendants move for summary judgment on the merits as to plaintiffs' federal claims and move to dismiss plaintiffs' state claims

in the Court's discretion associated with pendent subject matter jurisdiction. Plaintiffs allege four federal claims. The first two claims allege antitrust violations. In Claim I, plaintiffs allege that defendant violated 15 U.S.C. § 1 by unreasonably restraining trade in the sewage service market in Southern Pines by requiring Pinehurst National to purchase sewer services from Southern Pines. Claim II alleges that these same acts violated the anti-monopoly provision, 15 U.S.C. § 2. Claim III alleges that defendants' conduct deprived plaintiffs of their property right to service Pinehurst National without due process of law and without just compensation in violation of the fourteenth amendment. It further alleges that the due process violation is remediable under 42 U.S.C. § 1983. Claim X-A alleges that defendants' conduct illegally curtailed the utility service plaintiffs provide, in violation of 7 U.S.C. § 1926(b). *See* (Amendment to Complaint [November 20, 1987]). Defendants challenge each of these claims by their motion. The Court will analyze the antitrust claims together because the same consideration is dispositive of both. Then the Court will consider, in order, the section 1983, section 1926(b), and state claims.

## A. *The Antitrust Claims*

The heart of plaintiffs' antitrust claims is the contention that defendants unreasonably restrained trade and promoted monopoly by excluding them from providing sewage service to Pinehurst National. Plaintiffs contend that defendants did this by coercively conditioning the grant of Pinehurst National's zoning request upon its using Southern Pines water and sewer. Thus, plaintiffs' argue that defendants used zoning as the "means" to restrain trade in the "sewage service" market and thus violated the Sherman Act.

On the other hand, defendants assert the "state action exemption" established in *Parker v. Brown*[1] as a defense to federal antitrust liability. Defendants contend that their anticompetitive conduct respecting sewage service in Southern Pines is within the state action exemption. If defendants' contention is correct, then both antitrust claims fall; thus, the Court will analyze Claims I and II together.

■ The Sherman Act regulates *private* restraints on trade; Congress did not intend it to apply to anticompetitive conduct of a state acting through its legislature. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24, 29 (1985). However, municipalities are not immune from the antitrust laws by virtue of their status because they are not themselves sovereign. *Id.* "Rather, to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Id.* at 38–39, 105 S.Ct. at 1716, 85 L.Ed.2d at 29 (quoting *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364, 383 (1978).

■ In order for such a policy to exist, the state need *not expressly* state in a statute or its legislative history that it intends for the delegated action to have anticompetitive effects. *Id.* 471 U.S. at 43–44, 105 S.Ct. at 1718–19, 85 L.Ed.2d at 32–33. Moreover, an authorizing statute establishes a "state policy to displace competition" if it clearly *contemplates* anticompetitive conduct by a municipality. *See id.* at 42, 105 S.Ct. at 1718, 85 L.Ed.2d at 31. Such "contemplation" is demonstrated if the municipal conduct authorized by the state is forseeably anticompetitive. *See id.* In other words, if anticompetitive effects are the clear logical result of state authorized conduct, then the state contemplated them and the requisite "anticompetitive state policy" exists. *See id.* Therefore, a court must carefully examine the statutory basis upon which a municipality relies to justify anticompetitive conduct.

Defendants cite several provisions of the North Carolina General Statutes to support their claim that the complained of anticompetitive activity constitutes state action.

---

1. 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

The North Carolina General Statutes authorize cities to conduct "public enterprises." Section 160A–312 states in pertinent part:

> A city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises as defined in this Article to furnish services to the city and its citizens....
>
> A city shall have full authority to protect and regulate any public enterprise system belonging to it by adequate and reasonable rules and regulations.

The term "public enterprise" includes "water supply and distribution systems" and "sewage collection and disposal systems of all types." N.C.Gen.Stat. § 160A–311(2), (3). Furthermore, section 160A–317 provides:

> A city may require the owners of improved property located within the city limits and upon or within a reasonable distance of any water line or sewer collection line owned or leased and operated by the city to connect his premises with the water or sewer line or both, and may fix charges for the connection.

In *Hallie* the Supreme Court held that the Wisconsin statutory scheme regulating city sewage systems articulated a state policy to replace competition with regulation in the provision of sewage services. *Hallie*, 471 U.S. at 47, 105 S.Ct. at 1720, 85 L.Ed.2d at 34. The Court noted two aspects of the Wisconsin scheme that were important to its holding. First, the Wisconsin scheme granted to cities the authority to construct and repair sewage systems. *Id.* at 41, 105 S.Ct. at 1717, 85 L.Ed.2d at 31. Second, it granted cities the power to describe with particularity the district to be served. *Id.*

The *Hallie* rationale and holding mandate a similar conclusion respecting the North Carolina scheme. North Carolina General Statute 160A–312 grants cities the authority to acquire, construct, maintain, improve, own, operate, and regulate sewage collection systems of all types. Additionally, the North Carolina scheme more explicitly contemplates anticompetitive activity than the Wisconsin statutes cited in *Hallie* because it *expressly* authorizes cities to require those within its limits to use its sewer facilities. *See* N.C.Gen.Stat. § 160A–317. Therefore, the North Carolina legislature contemplated anticompetitive conduct by cities respecting sewage services within city limits. Accordingly, Southern Pines' anticompetitive conduct in attempting to exclusively serve Pinehurst National (whose development is in Southern Pines) was pursuant to a state policy to replace competition with regulation or public monopoly.[2]

Plaintiffs contend that defendants used the zoning power as the *means* to exclude them as a competitor. The undisputed facts do indicate that Southern Pines, through conditional zoning, sought to exclude plaintiffs from serving Pinehurst National. However, in analyzing the first two claims, one must constantly keep in mind that plaintiffs are alleging *Sherman Act* violations. Thus, for plaintiffs to succeed, the conduct must be an *antitrust violation*. But, as already discussed, North Carolina has withdrawn the provision of city sewage services from the competitive arena; accordingly, anticompetitive conduct related to sewage services is immune from the *Sherman Act* under the state action exemption. That zoning be the means of excluding plaintiffs does not change this analysis.[3] The relevant con-

---

**2.** Southern Pines annexed the Pinehurst National development area on July 9, 1985, pursuant to the latter's voluntary petition. Article 4A of Chapter 160A, North Carolina General Statutes defines the authority of cities to annex territory. *See* N.C.Gen.Stat. §§ 160A–24 to –58.10. Plaintiffs have not challenged the legality of the annexation; hence, Pinehurst National is within the corporate limits of Southern Pines. There-

fore, the annexation does not affect the state action exemption analysis.

**3.** The Court notes that the Fourth Circuit applies the "state action exemption" from antitrust liability broadly to exercises of zoning power by local governments. *See Pendleton Construction Corp. v. Rockbridge County*, 837 F.2d 178 (4th Cir.1988) (affirming *per curiam Pendleton Con-*

duct for antitrust purposes is the exclusion of plaintiffs as a competitor, not the means used. It is important to note that the state action exemption is not a blanket validation of defendants' conduct; it only renders the conduct not violative of the Sherman Act.

■ Plaintiffs also contend that their rights under the 201 Plan are pertinent to the antitrust analysis. North Carolina legislation permits regionalism and intergovernmental cooperation. *Trask v. City of Wilmington*, 64 N.C.App. 17, 25–26, 306 S.E.2d 832, 837 (1983). Specifically, N.C. Gen.Stat. § 160A–461 authorizes binding interlocal agreements. Plaintiffs contend that the 201 Plan in this case is such an agreement. Even assuming that the 201 Plan obligates Southern Pines to allow plaintiffs to serve Pinehurst National, the antitrust analysis is unchanged. It is unchanged because the section 160A–461 authority merely extends the powers of a municipality to act in concert with other local governments and in no way restricts the anticompetitive conduct contemplated in supplying sewage services. Accordingly, any rights that plaintiffs have under the 201 Plan and associated agreements arise from the contractual rights created therein. Any such rights do not arise under the Sherman Act.

To summarize, North Carolina has clearly articulated a policy of displacing competition in city sewage services with regulation or monopoly. Therefore, under the undisputed facts the state action exemption applies to defendants' conduct and defendants are entitled to judgment as a matter of law on Claims I and II. Moreover, the Court notes a contradiction in plaintiffs' position. If they were to successfully challenge defendants' conduct as an antitrust violation, then their own attempt to *exclusively* serve the Pinehurst National development would surely fall to the same challenge.

### B. *The Due Process, Section 1983 Claim*

Plaintiffs allege in Claim III that they have a property right to provide water and sewer service to the area being developed by Pinehurst National. They further allege that defendants' act of "conditional zoning" deprived them of such property right without due process and without just compensation, in violation of the fourteenth amendment. Consequently, plaintiffs seek a remedy under 42 U.S.C. § 1983.

On the other hand, defendants deny that plaintiff's federal due process rights have been violated. The parties stridently dispute whether plaintiffs have a protectible property interest. However, the Court believes that Claim III fails to state a claim upon which relief can be granted. In other words, assuming all the allegations in the complaint to be true and without reference to other materials, the Court finds Claim III insufficient to entitle plaintiffs to relief under 42 U.S.C. § 1983. Therefore, the Court will treat defendants' motion with respect to Claim III as one under Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismiss it.

■ Plaintiffs rights to serve Pinehurst National arise, if at all, under defendants' alleged contractual obligations associated with the 201 Plan. Under the North Carolina statutory scheme, a city has the right to exclude others from providing sewer service. *See* N.C.Gen.Stat. § 160A–317. Thus, nothing else appearing, plaintiffs would not have a colorable claim to serve Pinehurst National within Southern Pines. However, section 160A–461 of the North Carolina General Statutes authorizes cities to enter into binding interlocal agreements. Plaintiffs claim Southern Pines is bound under such an agreement—the 201 Plan and associated ordinances and contracts— to allow plaintiffs to serve Pinehurst National. Accordingly, plaintiffs' third claim in essence alleges that Southern Pines breached its contractual obligations.

Under section 1983, a party must allege the deprivation of a federal right. This plaintiffs have failed to do. Claim III is insufficient to state a claim under procedural due process because plaintiffs have an adequate state remedy in an action for

*struction Corp. v. Rockbridge County*, 652 F.Supp. 312 (W.D.Va.1987).

breach of contract. *Coastline Corp. v. County of Currituck*, 734 F.2d 175, 178 (4th Cir.1984)(citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). A *mere* breach of a contractual right is not a deprivation of property without constitutional due process of law; otherwise, virtually every controversy involving an alleged breach of contract by a government would be a constitutional case. *Coastland Corp.*, 734 F.2d at 178 (quoting *Medina Jeminez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981)).

Additionally, if a state actor breaches *substantive* provisions of a contract, procedural due process is not offended. *See Jeminez*, 650 F.2d at 371. Furthermore, such actions would not violate substantive due process. *Id.* at 370 n. 10. In *Casey v. Depetrillo*, the First Circuit held that the plaintiffs failed to state a claim for relief under § 1983 because "their underlying assertion was that defendants injured them by breaching the plaintiffs' employment contracts." 697 F.2d 22, 24 (1st Cir.1983). Plaintiffs asserted a due process violation but did not complain of any procedural inadequacy. In dismissing the claim, the First Circuit reasoned that a mere breach of a contractual right is not a deprivation of property without constitutional due process. *Id.* The court went on to state: "no different result is required under the takings clause." *Id.*

To summarize, the Court finds that, absent the contracts, the defendants have done nothing that state law did not authorize a municipal corporation to do. Claim III merely alleges that defendants have breached rights arising under contracts. Therefore, it fails to state a cognizable claim under section 1983 and will be dismissed. Furthermore, these contractual matters affect the workings of state political subdivisions and are thus more appropriately resolved in North Carolina's courts.

### C. *The 7 U.S.C. § 1926(b) Claim*

In order to construct the Moore County wastewater treatment facility, Moore County, as lead agency under the 201 Plan, borrowed approximately three million dollars from the Farmers Home Administration. Moore County provides wastewater *treatment* service for southern Moore County; however, it does not collect the sewage to be treated. This task is carried out by the "responsible service agencies" designated in the 201 Plan.

As discussed earlier, defendants seek to provide sewage collection service to Pinehurst National to the exclusion of plaintiffs. Plaintiffs contend this violates section 1926(b) of United States Code, Title 7.

■ Section 1926(b) provides in pertinent part:

The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body ... during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

Section 1926(b) establishes a bright line rule; it unambiguously prohibits any curtailment or limitation of an *FmHA indebted association's* service by municipal annexation or inclusion. *City of Madison v. Bear Creek Water Ass'n*, 816 F.2d 1057, 1059 (5th Cir.1987). The association need not show any economic prejudice. *Id.; Moore Bayou Water Ass'n v. Town of Jonestown*, 628 F.Supp. 1367, 1370 (N.D. Miss.1986).

■ However, this section is limited in its coverage. It applies to protect "any such association" from curtailment of its service. Therefore, the first element of a section 1926(b) violation is the curtailment or limitation of a service provided by a *covered association*. To define "any such association," one must look to 7 U.S.C. § 1926(a)(1), which states:

The Secretary is also authorized to make or insure loans to associations, including corporations not operated for

profit ... and public and quasi-public agencies to provide for ... waste disposal facilities.

Thus, "any such association" refers to an entity which has received a loan from the Secretary (FmHA). *See Bear Creek*, 816 F.2d at 1059; *Moore Bayou*, 628 F.Supp. at 1370 (this section affords protection only to those rural water associations indebted to FmHA).

In the instant case the entity which qualifies under the statute as an "any such association" is Moore County, the entity which received the FmHA loan. Although plaintiffs have contractual obligations to Moore County as one of the "responsible service agencies," they are not indebted to FmHA. Therefore, plaintiffs are not an "any such association" under section 1926(b) and their claim thereunder fails.

Section 1926(b)'s legislative history bolsters the Court's holding. The purpose of the statute is "to assist in protecting the territory served by such an association facility against competitive facilities...." S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2243, 2309. *See generally Bear Creek*, 816 F.2d at 1060. In light of this purpose, defendants' actions, whether otherwise legitimate or not, are outside the purview of section 1926(b). Defendants seek to provide sewage *collection* not *sewage treatment* service. Therefore, they are not attempting to compete with the sewage treatment service provided by the association indebted to FmHA, Moore County. Accordingly, under the undisputed facts, plaintiffs' claims X–A is defective and defendants are entitled to summary judgment thereon as a matter of law.

### D. *The State Claims*

 Having found each of plaintiffs' federal claims subject to dismissal before trial, the Court will not exercise pendent jurisdiction over their state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Indeed, even if a federal claim remained in this case, the Court in its discretion would not exercise pendent jurisdiction over plaintiffs' state law claims. It would not because of North Carolina's paramount interest in resolving the state law questions presented. *See* 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3567.1 at 122–23 (2d ed. 1984) (noting the considerations a court should consider in exercising its discretion under *Gibbs* and stating that a court "should avoid needless decisions of state law"). The state claims present important questions regarding the effect of interlocal agreements upon the political subdivisions of North Carolina. Therefore, the North Carolina judicial system is the appropriate forum to resolve plaintiffs' state law claims. The Court expresses no opinion as to the merits of the state law claims.

IT IS, THEREFORE, ORDERED that defendants' Motion For Summary Judgment on Claims I, II, and X–A be, and the same hereby is, GRANTED, and that such claims be, and the same hereby are, DISMISSED.

IT IS FURTHER ORDERED that plaintiffs' Claim III be, and the same hereby is, DISMISSED for failure to state a claim under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that plaintiffs' state law claims (Claims IV–XI, excluding X–A), be, and the same hereby are, DISMISSED in the Court's discretion not to exercise pendent jurisdiction.