*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0252P (6th Cir.)
File Name: 00a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ADAMS COUNTY REGIONAL
WATER DISTRICT; and
ADAMS COUNTY WATER
COMPANY, INC.,
     *Plaintiffs-Appellants,*

     *v.*

VILLAGE OF MANCHESTER,
OHIO; and VILLAGE OF WEST
UNION, OHIO,
     *Defendants-Appellees.*

No. 98-4117

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-01040—Susan J. Dlott, District Judge.

Argued: February 4, 2000

Decided and Filed: July 28, 2000

Before: MERRITT and CLAY, Circuit Judges;
HEYBURN, District Judge.[*]

———————————

[*] The Honorable John G. Heyburn, II, United States District Judge for the Western District of Kentucky, sitting by designation.

1

――――――――――

**COUNSEL**

**ARGUED:** Orla E. Collier III, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellants. Norman Edward Vollman, Milford, Ohio, John D. Woliver, Batavia, Ohio, for Appellees. **ON BRIEF:** Orla E. Collier III, Mark D. Tucker, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellants. Norman Edward Vollman, Milford, Ohio, John D. Woliver, Batavia, Ohio, for Appellees.

――――――――――

**OPINION**

――――――――――

CLAY, Circuit Judge. Plaintiffs, Adams County Regional Water District and its successor Adams County Water Company, Inc. (collectively "the Water District"), appeal from the district court's order denying Plaintiffs' motion for preliminary and permanent injunctive relief while declaring that the contract between Defendants, Village of Manchester, Ohio ("Manchester") and Village of West Union, Ohio ("West Union"), does not constitute an activity prohibited by 7 U.S.C. § 1926(b) of the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq*. ("the Act"). For the reasons set forth below, the district court's order is **REVERSED**.

**BACKGROUND**

On November 21, 1997, Plaintiffs filed suit against Defendants pursuant to 7 U.S.C. § 1926(b) of the Act. Plaintiffs alleged that West Union's proposed contract with Manchester ("the Manchester Contract") for the wholesale purchase of water violated § 1926(b), and Plaintiffs sought declaratory and injunctive relief in order to prevent Defendants from executing the Manchester Contract.

**CONCLUSION**

Because we find that the district court erred in its legal conclusion that Manchester Contract did not violate § 1926(b), we **REVERSE** the district court's order, and **REMAND** the case for proceedings consistent with this opinion.

The Court cannot agree with the Water District that section 1926(b) works to prevent this response by West Union.  Although the Act was clearly intended to protect rural water associations from physical encroachment by neighboring municipalities, the terms of the statute cannot be stretched to prohibit any effort by an association customer to secure water elsewhere.  Of course, the fact that the Manchester Contract does not violate federal law does not relieve West Union of its contractual obligation to purchase water from the Water District.

*Id.*

Although we appreciate West Union's position in this case, in light of the case law we cannot agree with the district court's legal conclusion.  The minimum and maximum terms of the contract are irrelevant for purposes of finding a violation of § 1926(b).  *See Jennings Water, Inc.,* 682 F. Supp. at 424.  As in *Jennings,* for purposes of § 1926(b), it is irrelevant what the terms of the contract are or whether a contract even exists between the Water District and West Union because West Union was receiving water from the Water District, the Water District is an association within the meaning of the Act with outstanding FmHA loan obligations, and West Union sought an additional source for its water.[3] *See id.*; *see also Lexington,* 93 F.3d at 235.

_____

   [3]We note that if the Water District was unable to provide water services to West Union and West Union suffered damages therefrom, then West Union may have an actionable claim under a breach of contract theory.  In such a case, the terms of the Water District Contract and any breach by the parties in regard thereto may be relevant for purposes of the state court contract dispute.  Furthermore, we note that this is not the case where West Union found itself in exigent circumstances thus necessitating a different water source, in that the record indicates that water supply was never interrupted to West Union.  This issue is not before the Court and is left for another day.

Plaintiffs filed a motion for a preliminary and permanent injunction, and on April 27 and 29, 1998, the district court consolidated the hearing on the preliminary injunction with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).  On September 2, 1998, the district court issued its findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.

The district court found that the Water District is the type of association protected by 7 U.S.C. § 1926(b), inasmuch as it is an "association" within the meaning of the Act with an outstanding debt to the Farmers Home Administration ("FmHA"), that has "provided or made service available" to West Union.  As such, the district court found that the remaining question was whether the Manchester Contract would "curtail or limit" the Water District's service to West Union as defined by the Act.

In addressing this question, the district court found that under the language of § 1926(b), there are two ways in which the service of a rural water association is "curtailed or limited."  Relying upon *Glenpool Utility Services Authority v. Creek County Rural Water Dist.,* 861 F.2d 1211 (10th Cir. 1988) and *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057 (5th Cir. 1987), the court found that the first method of curtailment is by the inclusion of the association's service area within the boundaries of any municipal corporation or other public body.  In other words, the district court found that any limitation of a water association's service resulting from municipal annexation or inclusion within municipal boundaries is prohibited.  Relying upon *CSL Utilities, Inc., v. Jennings Water, Inc.,* 16 F.3d 130 (7th Cir. 1994), the court then found that the second form of curtailment prohibited by § 1926(b) is the granting of any private franchise for similar service within the association's service area.  The district court concluded that the Manchester Contract does not constitute curtailment of the Water District's service under either category.  The court reasoned that because the Manchester Contract was between two public

parties it did not involve the grant of a private franchise; and that the Manchester Contract did not encroach upon the Water District's service inasmuch as Manchester had taken no steps to include the Water District territory within its boundaries. Accordingly, the district court declared that the Manchester Contract was not prohibited by federal law, and therefore denied Plaintiffs preliminary and permanent injunctive relief.

### *Facts*

The Water District is a rural water district operating under the authority of Chapter 6119 of the Ohio Revised Code. The Water District has provided wholesale water to West Union since 1971, pursuant to a water purchase contract (the "Water District Contract") which currently extends to December 31, 2030.

In order to finance construction of water facilities, the Water District secured funding through the FmHA by issuing a series of promissory notes to the FmHA, secured by various first mortgages issued to the United States Government. Specifically, since 1970, the Water District has issued seven promissory notes to the FmHA, totally approximately four million dollars with terms of forty years each. The FmHA loans were issued pursuant to 7 U.S.C. § 1926(b) for the purpose of extending rural water service.

Under its wholesale contract with West Union, the Water District provides water to West Union which is delivered to specific delivery points within its boundaries. West Union maintains its own distribution lines within its boundaries, and it resells the water to its residents. Since 1971, the Water District has been the sole and exclusive supplier of water to West Union.

Under the terms of the Water District Contract, the minimum annual purchase requirement is equal to West Union's water usage in the first year of service by the Water District; and the maximum amount which the Water District is obligated to supply is equal to one and one-half times the

States Court of Appeals for the Seventh Circuit affirmed the district court's holding.[2]  *See* 895 F.2d 311 (7th Cir. 1989).

Accordingly, it logically follows that West Union's contracting with Manchester for additional water supplies constitutes an encroachment in violation of § 1926(b). Based upon *Jennings* and the other case law cited above, it is clear that the district court's painstaking interpretation of the Water District's contract minimum and maximum amounts was irrelevant, as was its finding that the Manchester Contract was between two public entities. *See Jennings Water, Inc.,* 682 F. Supp. at 424 (finding it irrelevant whether a contract existed between the plaintiff and defendant light of the parties' actions, where the defendant was receiving water from the plaintiff).

The district court opined that the Manchester Contract was a perfectly reasonable response by West Union given the circumstances in 1995 through 1997, where, due to capacity problems, the Water District informed West Union that it was exceeding its maximum amount by forty-seven percent, and requested that West Union institute a tap ban while threatening legal action if West Union did not comply. The court found that as a result of the Water District's actions, West Union lost prospective economic development opportunities and was faced with the halt of all residential or business expansion unless and until the Water District consented. The court therefore concluded that "[u]nderstandably, the Village of West Union responded by exploring other possible water sources to supplement the water that it received from the Water District," and that the Manchester Contract was a reasonable answer to the problem. J.A. at 61. The court went on to hold as follows:

---

[2]This Court has cited *Jennings* with approval, as well as the cases upon which *Jennings* relied. *See Wayne,* 36 F.3d at 527-28.

*statute should not be construed narrowly to prohibit municipal encroachment only if technically by annexation or grant of franchise, but should be applied broadly to protect rural water associations indebted to FmHA from competition from expanding municipal systems.* This Court finds that North Vernon's encroaching on Jennings' service by contracting to sell water to CSL clearly constitutes competition by a municipality with a rural water association. To paraphrase the Fifth Circuit, because allowing North Vernon to do by contract "what it is forbidden by other means would render nugatory the clear purpose of § 1926(b)[,]" *Bear Creek,* 816 F.2d at 1059, the Court finds that North Vernon's contract to sell water to CSL violates 7 U.S.C. § 1926(b).

*Id.* at 425 (emphasis added) (relying upon *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057 (5th Cir. 1987); *Moore Bayou Water Ass'n, Inc. v. Town of Jonestown,* 628 F. Supp. at 1337 (N.D. Miss. 1986); *Rural Water Dist. No. 3 v. Owasso Utils. Auth.,* 530 F. Supp. 818 (N.D. Okla. 1979); S. Rep. No. 566, 87th Cong., 1st Sess., reprinted in 1961 U.S.C.C.A.N. 2243, 2309).[1] The United

---

[1] This Senate Report provides as follows:

This provision [Section 306 of the revised federal water loan program] authorizes the very effective program of financing the installation and development of domestic water supplies and pipelines serving farmers and others in rural communities. By including service to other rural residents, the cost per user is reduced and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water. A new provision [§ 1926(b)] has been added to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area by the rural system.

S. Rep. No. 566, 87th Cong., 1st Sess., reprinted in 1961 U.S.C.C.A.N. 2243, 2309.

---

minimum amount. However, despite this contract language, the parties are in dispute as to the contract minimum and maximum amounts of water.

The reason for the disagreement as to the minimum and maximum quantities of water to be provided is because the amounts were to be determined by West Union's actual usage in the first year of the contract, which was from July of 1971 through July of 1972, with the 5.3 million gallons per month being an approximation of the minimum amount used. However, the Water District was unable to produce records such as meter readings to determine the definitive amount of water used during the first year, and the contract minimum and maximum are the subject of a pending state action between the parties.

To this end, the district court calculated the minimum and maximum amounts of water required under the contract by using the amount of the canceled monthly checks from West Union to the Water District for the first year of service, divided by the billing rate in effect at the time, which equaled 6,819,724 gallons per month. Although the parties agreed that this figure was correct using the district court's approach, they disagreed as to whether this figure actually constituted the minimum monthly purchase. West Union claimed that the minimum amount was 5.3 million gallons per month, while the Water District claimed that the minimum amount was 8.5 gallons per month. The parties each submitted evidence in support of their respective positions, but the district court was not persuaded by the evidence – indicating that the contract language had never been amended. Accordingly, the district court found that the 6,819,724 figure was the most reliable figure that comported with the terms of the contract and therefore found this figure to be the contract minimum, thereby rendering the contract maximum to be 10,229,586 gallons per month (1.5 times the minimum amount).

During the first twenty-five years of the Water District Contract, there were no disagreements between West Union

and the Water District concerning the minimum and maximum contract terms. However, in July of 1995, the Water District began experiencing capacity and pressure problems, and the Water District advised West Union at that time that its water usage was approximately forty-seven percent in excess of the maximum specified by the contract; the average monthly amount used by West Union in 1995 was 11,448,000 gallons. In February of 1996, the Water District requested that West Union temporarily suspend new taps due to the fact that the Water District was pumping water in excess of plant capacity. Specifically, by way of letter to West Union, the Water District requested as follows:

> [W]e respectfully request that all villages temporarily suspend any future acceptance of service taps in their village until further notice. Of course, we realize that this limits future growth in the villages as well as the county. However, if over pumping continues into the spring and summer months, serious restrictions will have to be placed on every single water user in the county.

In April of 1996, the Water District sent another letter to West Union informing it that the Water District was continuing to face the "extremely serious problem" of demand, and calling for drastic steps to be taken in order to prevent an emergency situation. Despite the problems that the Water District was facing, water service to West Union was not interrupted at any time in 1996, and the tap ban was lifted in February of 1997. However, West Union claims that during the period of the tap ban it lost opportunities for economic growth. For example, West Union introduced evidence that the tap ban prevented a prospective fast food franchise from locating in West Union.

In response to the tap ban and claims by the Water District that it may not be able to keep up with the demand, West Union commenced plans to develop an alternative water supply from Manchester by constructing a water line from West Union to Manchester. Ultimately, West Union entered

between Jennings Water and CSL Utilities for Jennings Water to provide water services. *Id.* at 422. Under the contract, CSL Utilities purchased water from Jennings Water and resold the water to the residents of Country Squire Lakes, a subdivision in Geneva Township in Jennings County, Indiana. *Id.* at 422-23. In 1987, Jennings Water increased its water rates and, in response, CSL Utilities sought to purchase water directly from North Vernon, Indiana. *Id.* Jennings Water filed suit against the City of North Vernon seeking to enjoin it from selling water to CSL Utilities. *Id.*

The district court held that North Vernon's replacing Jennings Water as the primary supplier of water to CSL Utilities amounted to an action by a municipality that curtails or limits service provided by Jennings Water which was a rural water association indebted to the FmHA. 682 F. Supp. at 424. In so holding, the district court was not persuaded by the defendants' argument that after 1977, CSL never had a written contract with Jennings Water or considered itself Jennings Water's customer, where the undisputed record showed that for ten years Jennings Water provided water service to CSL for which CSL paid Jennings Water, and which CSL then distributed to the residents of Country Squire Lakes. *Id.* In other words, the *Jennings* court held that in light of the parties' actions, it was irrelevant what the terms of the contract may have been or whether a contract existed at all.

In its holding, the court also considered the question of "whether the municipal encroachment upon a rural water association's service that the statute prohibits, includes a municipality contracting to supply water to an area currently supplied by a rural association." *See* 682 F. Supp. at 424. Relying upon the three federal decisions relevant to the issue, as well as the legislative history of § 1926(b), the court held as follows:

> The clear message of the three federal cases applying 7 U.S.C. § 1926(b) and of the Senate Report is that *the*

governments not encroach upon the services provided by such associations, be that encroachment in the form of competing franchises, *new or additional permit requirements*, or similar means." *Id.* Moreover, the provision "should be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment." *Village of Sebring,* 36 F.3d at 527 (quoting *Jennings Water, Inc.,* 895 F.2d at 315)).

93 F.3d at 235 (emphasis added). The *Lexington* court did not reach the issue involved in this case because the plaintiff could not prove that it was an "association" that had made water service available. *See id.* However, *Lexington* is significant in any event because it expressly indicates this Court's approval of case law from other jurisdictions which have found that the issuance of a "new or additional permit requirement" violates § 1926(b). *See id.* (quoting with approval *Bear Creek Water Assoc., Inc,* 816 F.2d at 1059).

The district court in the case at hand focused on the fact that Manchester was not attempting to include West Union in its boundaries *per se,* and concluded that the Manchester Contract therefore did not encroach upon the Water District Contract. However, in light of the case law cited above, the district court erred in its reasoning. Construing § 1926(b) liberally, as this Court is required to do, *see Wayne,* 36 F.3d at 527, it is not necessary that Manchester actually annex or attempt to physically include West Union in its municipality in order for curtailment to be found. Indeed, when West Union contracted with Manchester for additional services, it violated § 1926(b) by encroaching on the Water District's FmHa services. *See Lexington,* 93 F.3d at 235 (quoting with approval *Bear Creek Water Assoc., Inc,* 816 F.2d at 1059).

A case of significant import in support of this conclusion is *Jennings Water, Inc. v. City of North Vernon, Ind.,* 682 F. Supp. 421 (S.D. Ind. 1988). There, the plaintiff, Jennings Water, was indebted to the FmHA by virtue of the contract

into the Manchester Contract whereby it agreed to construct a pipeline from West Union to Manchester and agreed to purchase water from Manchester. Under the Manchester Contract, Manchester agreed to supply to West Union a minimum of 3.9 million gallons of water per month and a maximum of 9.0 million gallons of water per month. It is the Manchester Contract which caused the Water District to file suit, claiming that the contract violates 7 U.S.C. 1926(b), thereby entitling the Water District to injunctive relief.

## DISCUSSION

The Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.,* grants the Secretary of Agriculture the authority to make or insure loans to associations, including municipalities, to provide for "the conservation, development, use, and control of water." *See* 7 U.S.C. § 1926(a) (1994). Section 1926(b) of the Act provides as follows:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b) (1994).

Before a party can prevail on a § 1926(b) claim, the party must establish that it is entitled to § 1926(b) protection by establishing that 1) it is an "association" within the meaning of the Act; 2) it has a qualifying outstanding FmHA loan obligation; and 3) it has provided or made service available in the disputed area. *See Lexington-South Elkhorn Water Dist.*

*v. City of Wilmore, Ky.,* 93 F.3d 230, 234 (6th Cir. 1996). The district court found that Plaintiffs met these criteria and that finding is not disputed on appeal. Therefore, the issue becomes whether the district court erred in finding that the Manchester Contract does not violate § 1926(b).

This Court reviews a district court's findings of fact for clear error, and a district court's conclusions of law *de novo*. *Tucker v. Calloway County Bd. of Educ.,* 136 F.3d 495, 503 (6th Cir. 1998). "'In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'" *Ellis v. Diffie,* 177 F.3d 503, 505 (6th Cir. 1999) (quoting Fed. R. Civ. P. 52(a)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

In *Wayne v. Village of Sebring,* 36 F.3d 517, 527 (6th Cir. 1994), this Court found that the curtailment provision of § 1926(b), "on its face, prohibits anyone from curtailing or conditioning the offer of water service based on inclusion within municipal borders." Although the *Sebring* court was considering a suit brought by village residents under 42 U.S.C. § 1983 and § 1985, and not the precise issue presented in the case at hand, the Court recognized that § 1926(b) established a bright line rule which unambiguously prohibits any curtailment or limitation of an FmHA indebted association's service by municipal annexation. *See id.* (citing *Pinehurst Enters. v. Town of Southern Pines,* 690 F. Supp. 444, 451 (M.D.N.C. 1988), *aff'd,* 887 F.2d 1080 (4th Cir. 1989); *Jennings Water, Inc. v. City of North Vernon,* 682 F. Supp. 421, 425 (S.D. Ind. 1988) *aff'd,* 895 F.2d 311 (7th Cir.

1989)). The court also recognized as follows regarding § 1926(b)'s prohibition on curtailment of services:

Most of the cases arising under § 1926(b) have involved a municipality's attempt to encroach on a rural water association's area of service. Courts have uniformly understood the section as forbidding such encroachment, concluding that § 1926(b) "should be given a liberal interpretation that protects rural associations indebted to the FmHA from municipal encroachment." *Jennings Water,* 895 F.2d [311,] 315 [7th Cir. 1989] (citing *Glenpool Utility Servs. Auth. v. Creek Cty. Rural Water Dist. No. 2,* 861 F.2d 1211, 1214 (10th Cir. 1988), *cert. denied,* 490 U.S. 1067 (1989); *City of Madison v. Bear Creek Water Ass'n,* 816 F.2d 1057 (5th Cir. 1987); *Pinehurst Enters.,* 690 F. Supp. at 444; *Moore Bayou Water Ass'n v. Town of Jonestown,* 628 F. Supp. 1367 (N.D. Miss. 1986); *Rural Dist No. 3 v. Owasso Utilities Auth.,* 530 F. Supp. 818 (N.D. Okla. 1979)). The *Jennings Water* court, for example, held that "[t]he statute explicitly prohibits municipal encroachment on a rural water association's service area by means of annexation or grant of private franchise." *Id.* at 314; *see also Glenpool Utility Auth.,* 861 F.2d at 1214 (same); *Bear Creek,* 816 F.2d at 1059 (same).

*Wayne,* 36 F.3d at 527-28.

This Court reiterated its belief that § 1926(b) provides a bright line rule as to curtailment of services in *Lexington-South Elkhorn Water District v. City of Wilmore, Kentucky.* There, the Court opined as follows:

Section 1926(b) has been construed as "unambiguously prohibit[ing] any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion." *Bear Creek Water Assoc., Inc.,* 816 F.2d at 1059. The statutory language "indicates a congressional mandate that local