*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0099P (6th Cir.)
File Name: 01a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

<u>98-6678</u>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

FIRST SOUTH BANK, formerly known as Hardeman County Bank,
*Plaintiff,*

*v.*

VENKAT PONNAPULA,
*Defendant-Appellant,*

STATE BANK OF INDIA, The New York Branch; TRACEY MALONE,
*Defendants-Appellees.*

<u>99-5190</u>

UNITED STATES OF AMERICA;
FIRST SOUTH BANK, formerly

Nos. 98-6678;
99-5190/5192

known as Hardeman County
Bank,

                        *Plaintiffs,*

          *v.*

VENKAT PONNAPULA,
          *Defendant-Appellant/*
          *Cross-Appellee,*

STATE BANK OF INDIA, The
New York Branch,
          *Defendant-Appellee/*
          *Cross-Appellant,*

TRACEY MALONE,
          *Defendant-Appellee.*

          99-5192

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee/*
          *Cross-Appellant,*

FIRST SOUTH BANK, formerly
know as Hardeman County
Bank,
                        *Plaintiff,*

          *v.*

V.

We reverse and remand for entry of judgment awarding the SBA and the Bank the entire deposit with all interest accrued, with the exception of the $750 Ponnapula paid in excess of the required 15% deposit, which should be returned to him. On remand, the district court shall decide the Bank's motion for sanctions.

potential damages under the contract. 995 S.W.2d at 98-99. Under the "prospective approach," the court focuses on whether the liquidated damages specified were a reasonable prediction of what a breach would cost the injured party in light of circumstances at the time the contract was formed. Under this approach, the amount of actual damages at the time of breach is of little or no relevance to whether the clause is an impermissible penalty. *Id.* at 99. Therefore, the district court's conclusion that the liquidated damages clause was unenforceable because the amount specified exceeded the actual damages  is no longer tenable under Tennessee law.

As the SBA could not know what price (if any) it would get for the property if the initial sale fell through,[7] the liquidated damages of the fifteen percent deposit, plus the interest accrued thereon, was an eminently reasonable estimate of future damages, and the contractual provision must be enforced.

IV.

The Bank also appeals the district court's implicit denial of sanctions for Ponnapula's failure to appear at a court-ordered settlement conference on February 25, 1997.  The district court granted Malone's motion for sanctions arising out of the same incident, but failed to rule on the Bank's motion.  We order the district court to rule on the Bank's motion on remand.

---

[7] The property was ultimately sold to the second highest bidder at the auction, but that bidder was under no obligation to purchase the property. Indeed, experience shows that even those who are under such an obligation sometimes refuse to live up to their agreements. Therefore, the SBA cannot be charged with knowledge at the time of the Ponnapula contract that it could resell the property at the price it did.

VENKAT PONNAPULA,
        *Defendant-Appellant/*
                *Cross-Appellee,*

STATE BANK OF INDIA, The
New York Branch,
                *Defendant,*

TRACEY MALONE,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 95-02643—Bernice B. Donald, District Judge.

Argued:  September 20, 2000

Decided and Filed:  April 4, 2001

Before:  BOGGS, SUHRHEINRICH, and GIBSON, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Craig V. Morton, II, MORTON, BREAKSTONE & GERMANY, Memphis, Tennessee, for Appellant. Paul A. Matthews, ARMSTRONG, ALLEN, PREWITT, GENTRY, JOHNSTONE & HOLMES, Memphis, Tennessee, Eugene J. Podesta, Jr., BAKER, DONELSON, BEARMAN & CALDWELL, Memphis, Tennessee, Frank A. Rosenfeld, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL

---

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

DIVISION, Washington, D.C., for Appellees. **ON BRIEF:**
Craig V. Morton, MORTON, BREAKSTONE &
GERMANY, Memphis, Tennessee, for Appellant. Paul A.
Matthews, ARMSTRONG, ALLEN, PREWITT, GENTRY,
JOHNSTONE & HOLMES, Memphis, Tennessee, Eugene J.
Podesta, Jr., BAKER, DONELSON, BEARMAN &
CALDWELL, Memphis, Tennessee, Frank A. Rosenfeld,
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL
DIVISION, Washington, D.C., for Appellees.

_____

## OPINION

_____

JOHN R. GIBSON, Circuit Judge.  Both sides appeal from
the declaratory judgment entered in this interpleader action,
brought to determine the owner of an earnest money deposit
paid at a foreclosure auction.  After a bench trial, the district
court entered a judgment awarding roughly half the deposit to
the lienholders (the State Bank of India and the United States,
on behalf of the Small Business Administration) and the rest
to Venkat Ponnapula, the bidder who made the deposit.
Ponnapula argues that the district court erred in holding that
the auction sale resulted in an enforceable contract.  He also
contends that the contract was unenforceable because it was
made in violation of federal conflict of interest laws.  The
SBA and the State Bank of India argue that the district court
erred in failing to award the entire amount of the deposit as
liquidated damages.  The State Bank of India contends that
the district court abused its discretion in failing to rule on the
Bank's motion for sanctions against Ponnapula.  We reverse
and remand with instructions to award the entire amount to
the lienholders and to rule on the State Bank of India's motion
for sanctions.

unenforceable.[6]  Our decision on the substantial participation
issue makes it unnecessary for us to consider the other
important issues raised under section 208, for instance,
whether Malone was a government employee within the
meaning of the statute and whether a person who instigates
wrongful conduct of a government employee may raise that
conduct as a defense to a claim by the government for breach
of contract.

III.

Having affirmed the district court's finding that there was
a contract and reversed the district court's holding that there
was a violation of section 208, we still must determine
whether the liquidated damages clause of the contract was
enforceable under state law.  The district court refused to
enforce the liquidated damages clause, but it is unclear
whether this was part of the court's remedy for the putative
section 208 violation or whether it was because the court
viewed the liquidated damages clause as a penalty
unenforceable under state law.  The former rationale is, of
course, not viable in light of our holding in Part I.  The second
rationale is vitally affected by the decision in *Guiliano v.
Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999), decided after the
district court's decision in this case.

The district court determined that the liquidated damages
specified by the contract amounted to a penalty by comparing
the amount of the liquidated damages ($166,500) with the
amount of actual damages the SBA suffered from the breach
($84,447.34).  Shortly after the district court's decision, the
Tennessee Supreme Court decided *Guiliano*, in which it
adopted the "prospective approach" for determining whether
a liquidated damages clause presents a reasonable estimate of

_____

[6]Because we hold that Malone's conduct did not render the contract
unenforceable, we need not address the Bank's alternative arguments that
such conduct renders Malone liable to it for a breach of fiduciary duty and
that Ponnapula is liable for causing Malone to breach her duty.

Ponnapula, [to] ensure that he understood the terms and to read the notice of sale around at the auction." Slip op. at 14. Applying the language of section 208 to these facts, the district court found that Malone's participation was not substantial.

Ponnapula argues that the district court's finding about the nature of Malone's duties is erroneous because the record showed she also was responsible for publishing notices of the sale, which put her in a position to control who attended the sale. However, the record shows that although Malone sent notices to the parties and published the legal notices of sale, as instructed by the SBA, the auctioneer retained by the SBA was responsible for advertising the sale, conducting the sale, and effectuating the minimum bid. The auctioneer also prepared the sales brochure. On the day of the sale, Malone read aloud the notice of sale as printed in the newspaper, and she participated in the closing by filling out the Memorandum of Sale form furnished by the SBA, reading the Memorandum aloud to Ponnapula, and witnessing his signature. The district court found, "Malone had no input regarding the terms of the sale nor the content of the pre-printed terms of the Memorandum," and Ponnapula does not dispute this finding. Ponnapula does not point to any record fact supporting his contention that Malone had any appreciable ability to influence which bidder won the bid. The district court's finding that Malone did not participate substantially in the transaction for purposes of section 208 is not clearly erroneous.

We conclude that the district court's error was one of law, in holding that there had been a section 208 violation despite a valid finding that one of the elements was lacking. Because we reject Ponnapula's attack on the finding that Malone did not participate in the contract substantially, we must reverse that part of the district court's opinion based on the idea that a violation of section 208 rendered the contract

When the owner of a Memphis motel defaulted on its two mortgages, the SBA, as first lienholder,[1] arranged for the hotel to be sold at auction. The SBA hired Memphis attorney Tracey Malone to act as substitute trustee in handling the foreclosure sale. Malone's duties as substitute trustee included sending notices of sale to the parties entitled to such notice, publishing the notices of sale, conducting the sale, and examining the title. The notices stated that the sale was "subject to validly liened ad valorem taxes, if any, which may be outstanding."

After Venkat Ponnapula expressed an interest in buying the motel, he received from Greg Hamilton, an SBA representative, a letter that stated, "In addition to putting 15% down at closing, you will be required to pay the real estate taxes owing on the property prior to closing." Murali Ponnapula, Venkat's brother and his agent in this transaction, contacted Malone's secretary many times inquiring about the amount of back taxes. When the secretary was finally able to inform Murali Ponnapula of the amount of back taxes, he thanked her with a gift of candy.

Before the auction Malone accepted a $5,000 "retainer" in cash from Murali and Venkat Ponnapula, which would be payment for future legal work related to the motel property in the event Venkat Ponnapula was the high bidder, although she refunded it ten days later. The same day she accepted the retainer, Malone decided she ought not to have done so, and she called Murali Ponnapula and asked him to retrieve the payment. He said he was too busy to come by her office that afternoon. Malone offered to bring the money to the foreclosure auction the next day, but Murali urged her not to do so, leaving her with the understanding that he would

---

[1] The State Bank of India's lien was actually first in time, but the Bank agreed to subordinate its lien to the $1 million lien in favor of Hardeman County Bank, which later became known as First South Bank. Hardeman County Bank later assigned the lien to the SBA. We will refer to the superior lien holders jointly as the SBA.

retrieve it later. Malone was thus in possession of the money on the date of the auction, although she later refunded it.

The day of the sale, Malone, Hamilton, and the auctioneer all announced that the sale was subject to taxes owed, and Hamilton announced that the back taxes were about $196,000. The terms of sale, announced before the bidding began, were that a purchaser who desired SBA financing would be required to pay a 15 percent earnest money deposit.

Venkat Ponnapula was the successful bidder at the auction with a bid of $1,110,000. There was confusion about whether the bid was $1,115,000 or $1,110,000, and Ponnapula agreed to sign a Memorandum of Sale stating the price as $1,115,000, with the understanding that the Memorandum would be corrected if the lesser amount were determined to be the actual sale price.[2] Malone made the Memorandum of Sale from a preprinted SBA form and gave Ponnapula a duplicate original. The Memorandum provided, in Malone's handwritten notation, "*Purchaser* to pay taxes current at closing through 1994." (Emphasis added.)

The Memorandum of Sale also provided that if Ponnapula failed to consummate the sale, the SBA had the option of retaining his earnest money deposit as liquidated damages. Because Ponnapula wanted SBA financing, the SBA required that he make an earnest money deposit of 15 percent of the purchase price, or $167,250 (based on the erroneous $1,115,000 figure) on the day of the sale. Ponnapula actually deposited $200,000, and the SBA refunded to him the excess over the required $167,250.

The day after the sale, Murali Ponnapula went to Malone's office and told her that Venkat had bid too much for the property. Therefore, the brothers wanted to cancel the sale and get the earnest money back. Venkat Ponnapula refused

---

[2]The SBA now concedes that the correct price was $1,110,000.

Supreme Court has held that transactions violating the predecessor to section 208 were unenforceable. *See United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 566 (1961). The SBA does not defend the district court's finding of no substantial participation, because the district court also made a contradictory conclusion of law that there had been a violation of section 208. *See* Slip op. at 17 (imposing on the SBA a "penalty for the Section 208 violation"). The SBA expresses uncertainty as to which of these mutually inconsistent propositions the district court meant to espouse. We conclude that the facts found by the district court are not clearly erroneous and therefore compel the legal conclusion that there was no section 208 violation.

Section 208 prohibits covered federal officers and employees from participating "personally and substantially" as government employees in a contract or other matter in which they have a financial interest. By limiting the prohibition to an officer or employee participating "personally and substantially . . . through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise," the statute excludes employees performing purely ministerial or procedural duties. Roswell B. Perkins, *The New Federal Conflict-of-Interest Law*, 76 Harv. L. Rev. 1113, 1128 (1963).[5] A statute aimed at preserving the integrity of the decisionmaking process does not need to extend to employees who have no discretion to affect that process.

The district court found that Malone's only duties at the sale "were to go over the memorandum of sale with Mr.

---

[5]Roswell B. Perkins was the Chairman of the Special Committee on the Federal Conflict of Interest Laws of the Association of the Bar of the City of New York. *See* The Association of the Bar of the City of New York, Special Committee on the Federal Conflict of Interest Laws, *Conflict of Interest and Federal Service* xii (1960). The committee's proposed legislation was one of the principal sources of the current federal conflict of interest laws. *See* Perkins, 76 Harv. L. Rev. at 1116-17.

a mutual mistake must be material and it must "affect the complainant injuriously." *Loveday v. Cate*, 854 S.W.2d 877, 880 (Tenn. Ct. App. 1992) (internal quotations omitted). Ponnapula is arguing that he should be released from the contract because he got a better deal than he bargained for, which obviously did not injure him. Second, Ponnapula argues that the error in the Memorandum of Sale misstating the purchase price prevented the parties from entering a binding contract. The district court found that Ponnapula signed the Memorandum of Sale under an explicit agreement that the price would be corrected if it turned out to be wrong and that this was done. Therefore, the $5,000 error in the memorandum was irrelevant to the actual terms of the contract.[4] Third, Ponnapula contends that it was not clear at the sale whether the required deposit would be 10% of the purchase price or 15%. The district court found that it was announced in advance that a 15% deposit would be required if the buyer wanted SBA financing, and this finding is not clearly erroneous. Moreover, Ponnapula actually deposited $200,000 at the time of sale, which would appear to be a waiver of any objection he now asserts to depositing 15% rather than 10%. Ponnapula's miscellaneous other arguments attacking the finding of a meeting of the minds are no more meritorious.

## II.

Ponnapula next argues that the district court erred in finding that Malone did not participate "substantially" in the formation of the contract. He reasons that, if Malone did participate substantially, she did so in violation of a criminal conflict of interest statute, 18 U.S.C. § 208 (1994), and the

---

[4]Ponnapula argues that the SBA never refunded to him the difference between the deposit he made based on the erroneous sale price listed in the Memorandum of Sale (15% of $1,115,000) and the proper deposit amount (15% of $1,110,000). His claim for refund of the $750 difference appears to be proper, and therefore the district court should award Ponnapula this amount on remand.

to close the sale, so the SBA sold the motel to the second highest bidder for $65,000 less than Ponnapula had bid.

The United States, on behalf of the SBA, brought this interpleader and declaratory judgment action to determine the rights of the United States, First South Bank, and the State Bank of India in the earnest money[3] and to declare the Memorandum of Sale to be a binding contract. Ponnapula answered and counterclaimed, alleging that both Malone and the auctioneer told him before the sale that the back taxes were to be paid by the SBA and that Malone wrote on the Memorandum of Sale that the seller was to pay the taxes. He alleged that the SBA's copy of the Memorandum of Sale, stating that the purchaser would pay the taxes, had been altered after he signed it. Ponnapula produced a copy of the Memorandum with a handwritten note that the seller would pay the taxes. He therefore contended that there was no meeting of the minds sufficient to form a contract and asked for a return of the earnest money and interest on it. The State Bank of India joined Malone and asserted a claim against her for failing to pay the Bank its share of the sale proceeds.

In their depositions, Venkat and Murali Ponnapula testified that they paid Malone $5,000 cash for helping them with the sale transaction. Based on this testimony, the State Bank of India then asserted claims against Malone for breach of fiduciary duty, negligent misrepresentation, and fraud.

After a bench trial, the district court found that Venkat Ponnapula had actual knowledge before the sale that the purchaser would be liable for the back taxes and that Ponnapula or someone acting at his direction had changed Ponnapula's copy of the Memorandum after it was executed to say that the seller would pay the taxes. Therefore, the court

---

[3]Because the SBA and the Bank have agreed between themselves on the proper disposition of the earnest money deposit if they should win, we are not asked to decide which of them is entitled to what portion of the money.

found the auction sale created a contract. However, the court next considered the effect of 18 U.S.C. § 208 (1994), a criminal conflict of interest statute. Relying on *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520 (1961), the court held that a contract would be voided where a government employee was (1) an officer or agent of the government for the transaction of business, (2) was directly or indirectly financially interested in the transaction, and (3) played a personal and substantial role in the transaction. The court found that the third element of a section 208 violation did not exist: "Ms. Malone's actions, [sic] may be considered on the threshold of personal, but are not substantial."

Next, the district court concluded that the SBA could be precluded from enforcing the liquidated damages clause of its contract because of unclean hands:

> [B]ecause of the actions of the Government's agent Tracy [sic] Malone an appearance of impropriety was created. The actions of Ms. Malone was [sic] attributed to the Government in this case.  As such, it would be fundamentally unfair to allow the Government the full benefit of its contract by enforcing the liquidated damages provision of the contract.

Despite having just found that one of the elements of a section 208 violation was lacking, the court fashioned a remedy awarding the SBA its actual damages, in order to compensate it for its losses, while still imposing on the SBA a "penalty for the Section 208 violation." The court declined to enforce the liquidated damages clause on the ground that damages in the full amount of the earnest money deposit were excessive in relation to the SBA's actual damages and so constituted an impermissible penalty. Therefore, the court awarded the SBA and the State Bank of India their actual damages from the breach, $84,447.34.

The court further found that Ponnapula had unclean hands as well, but awarded him the balance of the deposit not awarded to the SBA and the State Bank of India, or $82,803.

The SBA, the State Bank of India, and Ponnapula all appeal from the district court's judgment.

I.

Ponnapula contends that the district court erred in finding (1) that there was a meeting of the minds to form a contract and (2) that Malone did not participate in the sale substantially.

We review the district court's findings of fact for clear error and its conclusions of law de novo. *Adams County Reg'l Water Dist. v. Village of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

We readily dispose of Ponnapula's challenges to the district court's finding that there was a meeting of the minds to enter into a contract at the foreclosure sale. First, Ponnapula argues that the agreement was uncertain because no one knew the exact amount of the back taxes on the property at the time of the sale. He contends that in fact the taxes payable by the purchaser turned out to be less than the amount announced at the sale because he and Malone learned after the sale that $66,000 of the amount was actually someone else's responsibility under the State Bank of India subordination agreement. The terms of the contract were that the purchaser would pay the taxes, without reference to a particular amount, and this term is sufficiently definite to be enforced. Ponnapula's argument is more properly characterized as a mutual mistake argument than an uncertainty argument, but it has no merit, however stated. To affect a contract's validity,