[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 92.]

CITY OF NORTHWOOD, APPELLANT, *v.* WOOD COUNTY REGIONAL WATER AND
SEWER DISTRICT, APPELLEE.

[Cite as *Northwood v. Wood Cty. Regional Water & Sewer Dist.*,
1999-Ohio-350.]

*Municipal corporations—Public utilities—Water and sewer district—Municipality
may exercise eminent domain over public utility facilities owned by a
regional water and sewer district—Such exercise of eminent domain is
constitutional as long as the water and sewer district is not thereby
destroyed.*

A taking may be enjoined if it will result in the destruction of an existing public use
or the destruction, including economic destruction, of an existing public
utility operated by a municipality or political subdivision.

(No. 98-522—Submitted January 26, 1999—Decided July 14, 1999.)

APPEAL from the Court of Appeals for Wood County, No. WD-97-010.

————————————

{¶ 1} In 1991, a petition to form the Wood County Regional Water and
Sewer District was filed in the Wood County Common Pleas Court. On May 18,
1992, the district was formed by the authorization of the court. The district includes
the city of Rossford, the villages of Custar, Cygnet, Jerry City, and Millbury; and
the townships of Bloom, Center, Freedom, Henry, Lake, Liberty, Middleton,
Milton, Perrysburg, Plain, Portage, Troy, Washington, and Weston. Northwood
chose not to join the district. However, residents of Northwood received services
from the district. Many water lines and sewer lines, as well as pump and lift
stations, metering stations, and other facilities owned by the district, are located in
Northwood.

**{¶ 2}** As a result of an analysis by outside consultants originating two years earlier, Northwood concluded that it would be in its best interests to own and operate its own water and sewer system. Consequently, on August 24, 1995, pursuant to Section 4, Article XVIII of the Ohio Constitution and R.C. 163.04, Northwood passed Resolution 95-7, authorizing an offer to purchase the district's facilities in the city. The offer was made the next day, and on October 12, 1995, the district formally rejected it. Accordingly, pursuant to Section 5, Article XVIII of the Ohio Constitution, Northwood passed Ordinance 95-49, which declared its intent to appropriate the facilities owned by the district within Northwood.

**{¶ 3}** On August 1, 1995, the district filed a complaint for declaratory and injunctive relief against Northwood, seeking to prohibit Northwood from tapping into the district's utility lines without authorization. On October 20, 1995, the district also filed a verified complaint seeking a declaratory judgment that Northwood's threatened appropriation was unlawful. On December 28, 1995, Northwood filed a petition for appropriation.

**{¶ 4}** The trial court ruled that Northwood had the authority to appropriate the district's local water and sewer distribution lines that serve only the residents of Northwood. The trial court also concluded that there is no express or implied grant of authority under the Ohio Constitution or applicable statutes for Northwood to appropriate the district's main lines and related facilities passing through the city limits. Both parties appealed.

**{¶ 5}** The court of appeals determined that for purposes of Section 4, Article XVIII of the Ohio Constitution, the district was not a company or person from which Northwood had the constitutional right to appropriate and that Northwood had no statutory right to appropriate the district's property because the district was not an owner as defined in R.C. Chapter 163. The court of appeals also determined that Northwood had no express or implied power to appropriate the public utility facilities of another political subdivision.

**{¶ 6}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Bricker & Eckler, L.L.P., John F. Birath, Drew H. Campbell, Matthew J. Arnold; Ballenger & Moore Co., L.P.A.,* and *Brian J. Ballenger,* for appellant.

*Benesch, Friedlander, Coplan & Aronoff, L.L.P., Orla E. Collier III, N. Victor Goodman, James F. DeLeone; Spitler, Vogtsberger & Huffman* and *Daniel T. Spitler*, for appellee.

*Barry M. Byron, Stephen L. Byron* and *John Gotherman,* urging reversal for *amicus curiae* Ohio Municipal League.

*Peck, Shaffer & Williams, L.L.P.,* and *Thomas A. Luebbers,* urging affirmance for *amicus curiae* County Commissioners' Association of Ohio.

*Janet E. Jackson*, Columbus City Attorney, and *Daniel W. Drake*, Assistant City Attorney, urging reversal for *amicus curiae* city of Columbus.

*Stephen J. Smith*, Dublin Law Director, urging reversal for *amicus curiae* city of Dublin.

———————————

**PFEIFER, J.**

**{¶ 7}** The principal issue in this case is whether a municipality may exercise eminent domain over public utility facilities owned by a regional water and sewer district. For the reasons that follow, we hold that such an exercise of eminent domain is constitutional as long as the water and sewer district is not thereby destroyed. We reverse the judgment of the court of appeals and remand to the trial court for a determination of whether, in this instance, the regional water and sewer district would be destroyed by the proposed exercise of eminent domain.

**{¶ 8}** Section 4, Article XVIII of the Ohio Constitution provides: "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be

supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

{¶ 9} This court has stated that Section 4, Article XVIII, the Utility Clause, was "primarily intended to confer the power of eminent domain on municipalities for the purpose of acquiring existing public utilities." *Blue Ash v. Cincinnati* (1962), 173 Ohio St. 345, 352, 19 O.O.2d 274, 278, 182 N.E.2d 557, 562. Thus, Northwood, in seeking to exercise eminent domain over the water and sewer facilities of the district, is using the Utility Clause for exactly the purpose for which it was intended.

{¶ 10} The question whether the Utility Clause can be used to the detriment of a municipality was answered by *Blue Ash*. This court stated: "Where a municipal corporation to which a general power of eminent domain is given by law seeks to exercise its power with respect to property in another municipal corporation already devoted to public use, its action may be enjoined if the proposed use will either destroy the existing use or interfere with it to such an extent as is tantamount to destruction, unless power so to do is expressly authorized or arises by necessary implication." *Id.* at paragraph two of the syllabus; see 1A Sackman, Nichols on Eminent Domain (3 Ed.Rev.1998) 2-55, Section 2.2. There is no question that a municipal corporation can appropriate the property of another municipal corporation, and we cannot discern a reason to treat property of a political subdivision other than a municipality differently.

{¶ 11} The issue of whether Northwood's power to appropriate from a political subdivision is expressly authorized or arises by necessary implication is not necessary to the disposition of this case. See *Blue Ash*, 173 Ohio St. at 351-352, 19 O.O.2d at 278, 182 N.E.2d at 562. Accordingly, we leave that

4

constitutional question for another day and proceed as if Northwood were using its general power of appropriation. See Section 4, Article XVIII of the Ohio Constitution. Therefore, the issue devolves to whether Northwood's appropriation of the district's property will "destroy the existing use or interfere with it to such an extent as is tantamount to destruction."

{¶ 12} It cannot be seriously contended that the taking will destroy the existing use. Northwood intends to use the facilities exactly as they are currently being used. Nor, of course, will the taking interfere with the existing use so as to destroy it. We construe the question more broadly, however, and inquire whether the proposed taking would interfere with the district to such an extent as is tantamount to destruction of the district. We clarify *Blue Ash* by stating that a taking may be enjoined if it will result in the destruction of an existing public use or the destruction, including economic destruction, of an existing public utility operated by a municipality or political subdivision.

{¶ 13} This conclusion is a logical extension of *Blue Ash*. In the case at hand, the economic destruction of the district would necessarily result in the loss of an existing public use, namely the water and sewer services that the district provides to municipalities other than Northwood. Nothing in the Constitution or the laws of this state can be said to enable a municipality to effect any such outcome through the exercise of its otherwise lawful power of eminent domain. Thus, the issue in this case becomes narrower still: Will the proposed taking result in the destruction of the district?

{¶ 14} Neither lower court ruled upon this issue.[1] While there is abundant evidence in the record, we are loath to make a factual determination, especially in

---

1. The trial court did state that "allowing the City to take all of the water and sewer systems passing through the City would be tantamount to allowing the city to destroy the District's system for the convenience and economic benefit of the City." Although this seems to be a finding that destruction of the district would result, the very next sentence states that the appropriation "would, at the very least, supersede the former control by the District over its water and sewer system and, at the worst,

the first instance. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court to review the current record to determine whether the proposed taking will result in the destruction of the district.

*Judgment reversed*

*and cause remanded.*

KLINE and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., concurs in the syllabus and judgment.

COOK, J., concurs in judgment.

DOUGLAS and F.E. SWEENEY, JJ., concur in part and dissent in part.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting for RESNICK, J.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

**{¶ 15}** I concur in today's decision to the extent that the majority finds that a municipality has the authority to acquire existing public utilities at least within its municipal boundaries. This conclusion is clearly supported by the plain language of Section 4, Article XVIII of the Ohio Constitution. I disagree, however, with the remaining portion of today's decision, and, specifically, the syllabus law composed by the majority. The majority's reliance upon, and "logical extension" of, *Blue Ash v. Cincinnati* (1962), 173 Ohio St. 345, 19 O.O.2d 274, 182 N.E.2d 557, is misplaced. *Blue Ash* needs little discussion other than to point out that it involved the proposed *appropriation of a municipal street* by another municipality for airport purposes. Streets and highways are not "public utilities" under Ohio law. *Id.*, 173 Ohio St. at 350, 19 O.O.2d at 277, 182 N.E.2d at 561. Accordingly, I would reverse the judgment of the court of appeals and find that Northwood, in accordance with

greatly restrict the District's system." It is clear that the court did not focus on the issue as we have now defined it.

Section 4, Article XVIII, has the absolute authority to appropriate the district's water and sewer facilities located in Northwood.

F.E. SWEENEY, J., concurs in the foregoing opinion.

———————————