[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 296.]

HUDSON, APPELLEE AND CROSS-APPELLANT, *v.* SUMMIT COUNTY ET AL.,
APPELLANTS AND CROSS-APPELLEES.

[Cite as *Hudson v. Summit Cty.,* 2002-Ohio-6507.]

*Public utilities—County water supply system—Neither the Ohio Constitution nor*
*the Revised Code provides that upon incorporation, a municipality*
*acquires, by operation of law, existing water systems located within the*
*boundaries of the municipality—R.C. Chapter 6103 does not prohibit a*
*county from conveying a water system to a municipal corporation in which*
*the system is not located.*

(No. 2001-1328—Submitted May 22, 2002—Decided December 11, 2002.)

APPEAL AND CROSS-APPEAL from the Court of Appeals for Summit County, No.
20358.

_____

SYLLABUS OF THE COURT

1.  Neither the Ohio Constitution nor the Revised Code provides that upon
    incorporation a municipality acquires, by operation of law, existing water
    systems located within the boundaries of the municipality.

2.  R.C. 6103.22 does not prohibit a county from conveying a water system to a
    municipal corporation in which the system is not located.

_____

MOYER, C.J.

{¶1} From 1977 to 1993, 26 residential subdivisions were built in what was
then known as Hudson Township. Pursuant to contracts between appellant and
cross-appellee Summit County and the developers of those subdivisions, water
lines were constructed at the developers' expense and then conveyed to Summit

County. In exchange, the county allowed the developers to connect the water system to the county's existing water service facilities.

{¶2} On January 1, 1994, the village of Hudson and Hudson Township merged to create appellee and cross-appellant, city of Hudson. Five years later, Hudson filed a complaint in the Summit County Common Pleas Court seeking a declaratory judgment and injunctive relief against appellants and cross-appellees, Summit County and the city of Akron. Hudson sought a declaration that the water system located in Hudson had passed by operation of law to Hudson upon its incorporation. Hudson also sought an injunction to restrain Summit County and Akron from interfering with Hudson in governing, managing, and controlling the water system.

{¶3} Summit County subsequently issued a request for proposals for the purchase of all of its water service facilities, including the water system at issue in this case. Akron expressed an interest in purchasing the facilities, and Hudson moved for a temporary restraining order and a preliminary injunction to prevent the sale of the Hudson water system.

{¶4} The trial court determined that the water system had not passed to Hudson by operation of law. The court further determined that Summit County owned the water system and that Hudson was not entitled to an order prohibiting Summit County from selling the system. Accordingly, the trial court denied Hudson's complaint for a declaratory judgment and injunctive relief.

{¶5} The court of appeals unanimously affirmed the trial court's finding that the water system had not passed to Hudson and that Summit County continued to hold the water system in trust for the public good. However, in a split decision, the court reversed the trial court and held that R.C. 6103.22 prohibits Summit County from transferring the water system to any municipal corporation other than Hudson.

2

{¶6} The cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

{¶7} Summit County and Akron argue that R.C. Chapter 6103 does not require the county to sell the water system only to Hudson. Hudson, in its cross-appeal, argues that upon incorporation of the township in which the water system was located, the water system passed by operation of law to Hudson. Both the appeal and cross-appeal present issues of first impression. We dispose of the cross-appeal first.

{¶8} The Ohio Constitution grants to a municipality the power to provide water services to its residents. *Ottawa Cty. Bd. of Commrs. v. Marblehead* (1999), 86 Ohio St.3d 43, 45, 711 N.E.2d 663. Pursuant to Section 4, Article XVIII of the Ohio Constitution:

{¶9} "Any municipality *may acquire, construct, own, lease and operate* within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The *acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to*, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility." (Emphasis added.)

{¶10} This provision was "primarily intended to confer the power of eminent domain on municipalities for the purpose of acquiring existing public utilities." *Blue Ash v. Cincinnati* (1962), 173 Ohio St. 345, 352, 19 O.O.2d 274, 182 N.E.2d 557. However, we have held that a municipality may exercise eminent domain over a public water system owned by another political subdivision only so long as the taking will not result in the destruction of an existing public use. *Northwood v. Wood Cty. Regional Water & Sewer Dist.* (1999), 86 Ohio St.3d 92, 95, 711 N.E.2d 1003.

**{¶11}** R.C. 6103.22 governs water system contracts between counties and municipal corporations. The version of R.C. 6103.22 in effect at the time of Hudson's incorporation on January 1, 1994, is the version pertinent to this issue. It provided:

**{¶12}** "*Any completed water supply or water-works system * * * located within any municipal corporation or within any area which may be incorporated as a municipal corporation or annexed to an existing municipal corporation, or which provides water for such area, may by mutual agreement between the board of county commissioners and such municipal corporation be conveyed to such municipal corporation*, which shall thereafter maintain and operate such water supply and water-works." (Emphasis added.) 134 Ohio Laws, Part I, 695, 757-758.

**{¶13}** Summit County maintained and operated the water system prior to Hudson's incorporation and continues to do so. Hudson did not object to Summit County's ownership and maintenance until in 1999, five years after Hudson's incorporation, when Hudson commenced this litigation, arguing that it automatically acquired the water system upon incorporation.

**{¶14}** The court of appeals held that neither the Ohio Constitution nor Revised Code provides that upon incorporation a municipality acquires, by operation of law, existing water systems located within the boundaries of the municipality. The court concluded that Hudson could acquire the water system either by eminent domain or by reaching an agreement with Summit to convey the water system to Hudson pursuant to R.C. 6103.22.

**{¶15}** We agree. Section 4, Article XVIII of the Ohio Constitution states only that a municipality "*may* acquire, construct, own, lease and operate within or without its corporate limits" any public utility. (Emphasis added.) Similarly, R.C. 6103.22 provided that a water system within a municipal corporation "*may * * * be conveyed to such municipal corporation.*" (Emphasis added.) Neither of these

4

makes transfer automatic. Therefore, we affirm that portion of the court of appeals' decision holding that Summit still owns the water system.

{¶16} Having disposed of the cross-appeal, we consider Summit's and Akron's appeals, which present the issue whether a county that owns a water system located within one municipality may sell it to any other municipality. Summit argues that Section 4, Article XVIII of the Ohio Constitution, and R.C. 6103.21, 6103.22, and 6103.31 empower Summit to sell its water system to "any municipality or county that it, in its discretion, deems appropriate to serve the best interest of the County as a whole."

{¶17} The version of R.C. 6103.21 in effect at the time this lawsuit was filed provided:

{¶18} "At any time after the formation of any sewer district, the board of county commissioners may enter into a contract upon such terms and for such period of time as are mutually agreed upon with any municipal corporation or any other county to prepare necessary plans and estimates of cost and to construct any water supply improvement to be used jointly by the contracting parties, and to provide for the furnishing of water and for the joint use by such contracting parties of such water supply improvement or the joint use of any suitable existing water supply or water mains belonging to either of such parties." 1953 H.B. No. 1.

{¶19} R.C. 6103.22 was amended in 1997. The cross-appeal addresses the 1994 incorporation of Hudson; therefore, we applied the pre-1997 version of R.C. 6103.22 to the issue on cross-appeal. The issue we now address, however, concerns Summit County's ability to sell the water system at the time the lawsuit commenced, i.e., January 22, 1999. Therefore, the version of R.C. 6103.22 relevant to this issue was the version in effect in 1999, which contained the 1997 amendments. That version of R.C. 6103.22 provided:

{¶20} "All contracts under section 6103.21 of the Revised Code shall provide for payment to the county or municipal corporation owning, constructing,

or agreeing to construct the water supply improvement to be jointly used of the amount agreed upon as the other party's share of the cost of the water supply improvement. The contract also shall provide for payment to the county or municipal corporation owning or constructing and maintaining the improvement of the amount agreed upon for the other party's share of the cost of operating and maintaining the water supply improvement, including the cost of water, or in lieu of all other payments an agreed price per unit for water furnished. A county or municipal corporation owning, constructing, or agreeing to construct a water supply improvement and permitting the use of it by another county or municipal corporation shall retain full control and management of the construction, maintenance, repair, and operation of the improvement, except when conveyed to a municipal corporation as provided in this section.

{¶21} "*A completed water supply or water-works system*, as defined in sections 6103.01 and 6103.02 of the Revised Code, for the use of any sewer district, constructed under this chapter, and any part thereof, located within any municipal corporation or within any area that may be incorporated as a municipal corporation or annexed to an existing municipal corporation, or that provides water for such an area, by mutual agreement between the board of county commissioners and the municipal corporation *may be conveyed to the municipal corporation*, which shall thereafter maintain and operate the water supply or water-works. The board may retain the right to joint use of the water supply or water-works for the benefit of the district." (Emphasis added.) 147 Ohio Laws, Part II, 2495, 2511.

{¶22} R.C. 6103.21 empowers a board of county commissioners to contract with a municipal corporation to construct a water supply improvement so that both entities can use it. R.C. 6103.22 addresses contractual requirements for such joint ventures and states the parties' rights with respect to such an arrangement. It further provides for the conveyance of a completed water system from a county to a municipal corporation.

6

**{¶23}** We conclude that R.C. 6103.21 and 6103.22 must be read in pari materia; however, the phrase "*may be conveyed to the municipal corporation*" in R.C. 6103.22 is permissive, not prohibitive. Therefore, R.C. 6103.22 does not prohibit a county from conveying a water system to a municipal corporation in which the system is not located.

**{¶24}** Furthermore, R.C. 6103.31 specifically authorizes a board of commissioners to sell a water system. The version of R.C. 6103.31 in effect when this lawsuit was filed provided:

**{¶25}** "If the best interests of the county and the users of a public water supply of the county so require, the board of county commissioners may sell or otherwise dispose of such public water supply to another political subdivision, person, firm, or private corporation." 132 Ohio Laws, Part I, 2056-2057; 132 Ohio Laws, Part II-III, 2342-2343.

**{¶26}** The term "public water supply" as used in R.C. 6103.31 is not defined in the Revised Code. However, former R.C. 6103.01 defined "public water supply" to include distribution facilities such as the water system at issue in this case. 1953 H.B. No. 1. Although R.C. 6103.01 stated that the definition was for the term used in "sections 6103.02 to 6103.30 inclusive," we believe that it was simply an oversight that the General Assembly did not amend R.C. 6103.01 to extend the definition to R.C. 6103.31 when it was enacted in 1967. We therefore construe the term as used in R.C. 6103.31 to have the same meaning that it has in the rest of the chapter.

**{¶27}** Tellingly, R.C. 6103.31 does not limit a county to selling its water system only to the municipality within which the water system is located. Instead, the board is given the freedom to sell to a political subdivision, person, firm, or private corporation so long as the sale is in the best interests of the county and users of the public water system.

**{¶28}** Finally, as previously mentioned, a municipality may acquire, construct, own, lease, and operate water systems outside its corporate limits. Section 4, Article XVIII, Ohio Constitution. Reading into R.C. 6103.21, 6103.22, and 6103.31 a requirement that a board of county commissioners is restricted to sell only to a municipality within which the water system at issue is located would impose an additional restriction not supported by Section 4, Article XVIII of the Ohio Constitution. In other words, if a municipality may acquire, own, lease and operate water systems located outside its corporate limits, then surely a county may sell its water system to a municipal corporation other than the one in which the system is located. Therefore, we hold that Summit County may sell the water system to Akron or any other municipality.

**{¶29}** For the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeals.

Judgment reversed in part
and affirmed in part.

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

————————————

**COOK, J., concurring in part and dissenting in part.**

**{¶30}** I agree with the majority's conclusion that neither the Ohio Constitution nor the Revised Code provides that Hudson's incorporation meant that it acquired the water system by operation of law. I disagree, however, with the majority's determination that Summit County may sell the water system to Akron. In regard to this second issue, I would follow the opinion of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

————————————

Walter & Haverfield, L.L.P., Charles T. Riehl, Barbara R. Marburger, and R. Todd Hunt, for appellee and cross-appellant.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Sandy J. Rubino, Assistant Prosecuting Attorney, for appellant and cross-appellee Summit County

*Max Rothal*, Akron Law Director, and *Cheri Burt Cunningham*, Assistant Law Director, for appellant and cross-appellee city of Akron.

_____